# UNITED STATES DISTRICT COURT

_____Eastern_____ District of _____Michigan_____

UNITED STATES OF AMERICA

v.

__Syed Ibrahim Hussain__
*Defendant*

**ORDER OF DETENTION PENDING TRIAL**

Case Number: 13-30276

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

## Part I—Findings of Fact

- ☐ (1) The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has been convicted of a ☐ federal offense ☐ state or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed - that is
  - ☐ a crime of violence as defined in 18 U.S.C. § 3156(a)(4).
  - ☐ an offense for which the maximum sentence is life imprisonment or death.
  - ☐ an offense for which a maximum term of imprisonment of ten years or more is prescribed in _____
  - ☐ a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C), or comparable state or local offenses.
- ☐ (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.
- ☐ (3) A period of not more than five years has elapsed since the ☐ date of conviction ☐ release of the defendant from imprisonment for the offense described in finding (1).
- ☐ (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of (an) other person(s) and the community. I further find that the defendant has not rebutted this presumption.

### Alternative Findings (A)

- ☐ (1) There is probable cause to believe that the defendant has committed an offense
  - ☐ for which a maximum term of imprisonment of ten years or more is prescribed in _____
  - ☐ under 18 U.S.C. § 924(c).
- ☐ (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternative Findings (B)

- ☐ (1) There is a serious risk that the defendant will not appear.
- ☐ (2) There is a serious risk that the defendant will endanger the safety of another person or the community.

## Part II—Written Statement of Reasons for Detention

I find that the credible testimony and information submitted at the hearing establishes by ☒ clear and convincing evidence ☐ a preponderance of the evidence that

## Part III—Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

5/24/13
*Date*

_____
*Signature of Judge*

U.S. Magistrate Judge Mona K. Majzoub
*Name and Title of Judge*

*Insert as applicable: (a) Controlled Substances Act (21 U.S.C. § 801 *et seq.*); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

# Syed Ibrahim Hussain Order of Detention

Defendant is a 33 year old divorced father of two who has resided in Florida for 30 years. His ex-wife and his two children, ages 10 and 12, reside in Florida, outside of Jacksonville. He attended Ross Medical School on the island of Domenica beginning in 2009. He completed a two year study course there, and then came to the mainland to begin his clinical rotations in 2011. His first rotation was in Florida from December 2011 through early 2012. In June 2012 he began his second rotation at St. Joseph Hospital in Pontiac, MI in physical medicine and rehabilitation medicine. It was this second rotation that brought him to Michigan, where he has been residing at an Extended Stay Motel in Livonia for the past 10 months. Defendant's father is Pakistani, and Defendant has three half siblings who reside in Pakistan. The remainder of his family, including his mother and his own two children and three half siblings, live in Florida.

Defendant's father is a very successful practicing physician in Jacksonville Florida. Defendant has been on his father's payroll since 1999 and receives approximately $4000 monthly from his father who pays him as a "consultant". Defendant owes $150,000 in student loans (deferred), pays $2000 in child support on a monthly basis, owns a 2012 Toyota Camry (worth $25,000), owns the marital home where his ex-wife and children live (valued at $140,000) and spends $1500 monthly on personal living expenses. He has $11,000 in his personal checking account. By all accounts, Defendant is supported by his father who lives in a waterfront home in Florida valued at much more than $1 million. Defendant has retained counsel.

Defendant is charged by way of criminal complaint with making violent threats against a young woman using interstate means of communication. Specifically, Defendant is alleged to have threatened to rape and kill a 21 year old woman whom he stalked and planned to abduct and take by force. On March 5, 2011 Victim #1 went to the Dearborn police and provided numerous text messages where Defendant specifically and in detail described how he was going to assault and maim her if she did not marry him. Victim #1 directed Defendant to stop contacting her and communicating with her, and warned him that she would go to the authorities if he persisted. Defendant ignored her.

On April 24, 2013 the Canadian Border Services Agency notified Detroit FBI that Defendant had attempted to enter Canada and used two suspicious and contradictory reasons for his entry. His vehicle and belongings were then searched and numerous messages were found on his iPhone which in effect encouraged Defendant to stay on "his mission" and indicating that Defendant had concluded "Phase C" of his mission and was on to "Phase D". One message read that if Defendant succeeded in his mission that he might "make a good soldier after all". The Canadian agents found buckshot shotgun ammo in his vehicle, along with photos of a shotgun, pistol, and a taser on his iPhone. A further search of Defendant's iPhone revealed that Defendant had purchased a Spygadget.com GPS vehicle and person searching device, a monthly subscription to Brickhouse Security (specializing in selling surveillance and tracking equipment and services), and a new cell phone (purchased on line). Defendant had also hired a private detective agency to gather further information regarding Victim #1 for Defendant. There were also texts received about two tracking devices Defendant had just purchased and wondering if anyone was going to get hurt. Defendant responded "Hopefully not" followed by a description of the phases of the mission (phases B, C, D and E referenced). Defendant was in contact with a second individual who encouraged Defendant to continue on with the mission. References to the rape of women were also discovered on Defendant's iPhone.

Defendant sent Victim #1 text messages where he threatened to gang rape her, told her that his mother was Puerto Rican and that he had connections to gangs in Florida which he could summon to physically hurt her. Law enforcement officers subsequently found a black magnetic box placed on the underside of Victim #1's Chevy Malibu which was one of four tracking devices purchased by Defendant.

Other text messages sent by Defendant to Victim #1 make references to the Defendant strangling her, slapping her, killing her, ruining her, burning her, raping her, and is filled with innumerable profanities which will not be repeated here. Victim#1 stated in no uncertain terms that if he did not desist from these communications that she will go to the authorities, and Defendant told her to go and "make her report".

Defendant also had in his possession a Personal Digital Assistant. Entries from this device were marked as Gov. Exh. #1 which consists of a time line of entries from 2/25/13 to 4/25/13 which depict Defendant's "diary" of the steps he took to accomplish his plan to abduct and assault Victim #1. These entries include such things as "GPS SUV at 5 am, get cw permit, apply for gun permit, plan to go to Dearborn, charge GPS, estimate menstrual, get gps back, buy voice rec, find legit reasons/alibis to gps, send a plea from Lebanon, Sam MI alibi, menstrual, buy cuffs, dye hair/beard, charge stun gun, buy shotgun and ammo, plant gps at 2 am, GPS place at 3:07 am, buy rope chain, stalking 195, prep Livonia room, buy prepaid phone, buy panties, get Mich ID, buy shotgun, Ambien, Mich ID, Rowa place in Iraq, find Victim #1's car, Get an Iraq job, Get visa to Iraq, Monitor egress to Oakland, Prep other phone, prep cars for abduction, drop note, print abuse papers, prep Taylor room"......

Defendant's hotel room and car were searched pursuant to a State of Michigan Search Warrant. From his car the following were retrieved: a shotgun, handcuffs, handcuff keys, vest, leg irons, receipt for purchase of a gun, boxes containing portable GPS, testosterone, syringes and vials.

Defendant's laptop was also searched. Forty seven (47) images of child pornography were found, all of them explicit, including a video of a 10 year old girl performing oral sex on an adult man. As stated above, Defendant has two minor children, a 12 year old girl and a 10 year old boy.

There is also information on Defendant's Personal Assistant suggesting that Defendant is addicted to sleeping pills such as Ambien, Lunesta etc.

In addition to arguing that Defendant is a danger to society by clear and convincing evidence in that Defendant planned and made elaborate preparations to abduct Victim #1 and harm her, the Government also argued that Defendant is a risk of flight, based upon the fact that he has traveled overseas frequently in the past, several times to Pakistan, and Syria, and that he has lived in Domenica for two years where he was enrolled in medical school, and that his ties to Michigan are tenuous.

Defendant argues that he has no criminal history, that he has family friends with whom he can live in this district who would be willing to act as third party custodians, that he is already on a tether, and therefore is not a risk of flight, and that his passport has been surrendered. Defendant also argues that he cooperated with authorities when presented with the search warrants, and that he did not flee for two days prior to his arrest when he had the opportunity to do so. His parents were present in court as were his family friends from Woodhaven.

Pretrial Services interviewed the Defendant and recommends detention based upon danger. This court agrees that there is clear and convincing evidence that Defendant made elaborate preparations to stalk, intimidate, threaten, and ultimately abduct and rape and maim Victim #1, that he spent months planning the abduction and the harm that he was going to exact upon her, and that he knew it was wrong and mentioned on Facebook that if caught he could get up to three years of jail time, but that it didn't matter. His text messages, Facebook posts, and entries into his Personal Digital Assistant give a clear view of what was going through his mind, his rants, his rage, the brutality which he planned to inflict, his utter lack of rational thought, and his weeks of preparations to abduct and carry out this plan. Defendant had the plan, the means and the intent to carry out this violence act of abduction and sexual and physical assault. And all this was done as Defendant was undertaking his clinical rotations in preparation for completion of his medical school studies, following which he planned to take the Hippocratic oath (to others do no harm).

Additionally, Defendant was making preparations to get a visa for Iraq, to escape to Iraq and find a job in Iraq. Therefore this Court finds by a preponderance of the evidence that Defendant poses a risk of flight.

There is no condition or combination of conditions that would assure Defendant's appearance in Court or the safety of the community. Therefore Detention is Ordered.